FILED

2013 Feb-08  AM 10:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **TERRALL L. HART,** | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CV-12-S-1060-S** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER OF REMAND

Claimant, Terrall Hart, commenced this action on April 6, 2012, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying his claim for a period of disability and disability insurance benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by

substantial evidence nor in accordance with applicable legal standards.  On the introductory page of claimant's brief,[1] he states that he will be making the following arguments:

1.  The ALJ failed to recognize the severity of Mr. Hart's medical impairments.

2.  The ALJ failed to properly assess Mr. Hart's Residual Functional Capacity.

3.  The Administrative Law Judge's finding that the Claimant can perform the sitting, standing, reaching, bending, and stooping requirements of sedentary work is not supported by the opinions of any treating or agency physicians, warranting reversal.

4.  The ALJ Failed to comply with SSR 96-9P and ignored portions of the opinion stated within a Residual Functional Capacity of a treating physician and failed to provide any reasons for her obvious rejection of this evidence.

5.  While the ALJ summarized the medical evidence, she completely fails [sic] to appreciate the seriousness of Mr. Hart's medical condition and her RFC assessment is therefore simply conclusory and does not contain any rationale or reference to the real supporting evidence, as required by Social Security Ruling 96-8P.

6.  Although the ALJ concluded that the Claimant could no longer return to his past relevant work, the Vocational Expert's opinion was not considered in light of the treating physicians [sic] opinions as to the claimant's limitations which would preclude

---

[1] Claimant's brief was due August 27, 2012, or forty-five days after the Clerk sent a briefing letter to counsel on July 11, 2012.  *See* doc. no. 6 (briefing letter).  However, claimant did not file his brief until October 3, 2012, more than a month late.  *See* doc. no. 8 (claimant's brief).  Even though claimant did not seek leave of court to file the brief outside of the deadline, the court allowed the brief.  Counsel for claimant is advised, however, that in future cases, all briefs must be filed on time, unless the deadline is extended by court order for good cause shown.

other job opportunities, as required by SSR 82-62.

7.    While the ALJ summarized the Claimant's testimony in the decision, she erred when she failed to provide specific rationale for rejecting this testimony, as required by SSR 96-7P.  96-7P sates, "It is not sufficient for the adjudicator to make a single conclusory statement that [']the individual's allegations have been considered['] or that [']the allegations are (or are not) credible.['"]

8.    The ALJ failed to comply with SSR 83-20 by not calling on the services of a medical advisor to determine the severity and onset of the Claimant's impairments.

9.    The ALJ disregarded Mr. Hart's complaints of pain and for all of the above reasons did not follow the Eleventh Circuit's pain standard.[2]

However, it is only necessary to consider claimant's arguments about the ALJ's consideration of the opinions of Dr. Tucker Mattox and Dr. K. David Moore, claimant's treating physicians.

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted).  Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*.  Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even

---

[2] Doc. no. 8, at 1-2 (alterations supplied).

a treating source, that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner."  20 C.F.R. § 416.927(e).

Social Security regulations also provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate:  the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 404.1527(d).  *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Dr. Mattox stated on April 5, 2007, less than two months after claimant's injury, that claimant could "work only sitting down," with "no standing, walking, climbing, etc."[3]  He repeated that limitation on May 3, 2007.[4]  On June 22, 2007, Dr. Mattox stated that claimant "can be light duty at work sitting down.  No standing,

---

[3] Tr. 169.

[4] Tr. 167.

4

walking or climbing, using crutches if that's available."[5]  By September 14, 2007, Dr. Mattox stated that claimant "can work if he had sit down position with occasional standing or walking.  If that is unavailable he will [be] out for some time."[6]  On October 26, 2007, Dr. Mattox stated:

> I would say the restrictions we have him in, as far as no prolonged standing, walking, climbing.  No crawling or squatting.  All these things will be permanent restrictions, but it is my opinion that he is going to have to work toward finding him a job where he can do minimal standing and walking.  Certainly no lifting, climbing, or squatting. Perhaps a sit-down type of desk job, if possible.  I would recommend that he work towards that.[7]

On February 1, 2008, Dr. Mattox stated that claimant "needs to do light duty work, sitting job but no prolonged walking, climbing, etc."[8]  On June 5, 2008, Dr. Mattox stated that claimant's "work options are very limited.  He would have to be light duty with no prolonged walking or standing.  If he does sitting work he would have to have the opportunity to move around a bit."[9]  On August 14, 2008, Dr. Mattox stated that claimant "can do as much walking or standing as he can tolerate but he is going to have to be continued light duty, sitting down, minimal walking and standing on this side.  He is not able to do any athletics or other activities.  He is still having to

---

[5] Tr. 168.

[6] Tr. 166 (alteration supplied).

[7] Tr. 165.

[8] *Id.*

[9] Tr. 164.

use a walking stick from time to time."[10]

Dr. Mattox completed a Physical Residual Functional Capacity Questionnaire May 6, 2010. Dr. Mattox stated that he had treated claimant since February 15, 2007 for a left hip dislocation with avascular necrosis to the femoral head. Claimant experienced pain and loss of range of motion as a result of his injury, and his prognosis was "poor." Claimant's impairments were expected to last at least twelve months, and Dr. Mattox did not think claimant was a malingerer. Dr. Mattox indicated that claimant's impairments were reasonably consistent with the symptoms and functional limitations alleged. Claimant would frequently experience pain that was sufficiently severe to interfere with his attention and concentration, but he would be capable of a low stress job. Claimant could walk less than one block without rest or severe pain. He could sit for more than two hours at a time during a workday, but could stand for only thirty minutes at a time. He could sit for a *total* of at least six hours, and stand and walk (combined) for less than two hours, during a workday. Claimant would not need to include periods of walking around during an eight-hour workday, but he would require the ability to shift positions at will from sitting, standing, or walking. He also would need to take one or two unscheduled breaks during a workday. Dr. Mattox did not state how long those breaks would need to last. Claimant would need to use an assistive device for occasional standing and/or

---

[10] Tr. 162.

walking, but he would not need to elevate his legs during prolonged sitting. Claimant could occasionally lift and carry up to ten pounds, and he would not have any significant limitations in repetitive reaching, handling, or fingering. He could stoop and crouch ten percent of the time during a workday. He would likely have "good days" and "bad days," and he would likely be absent from work about once a month as a result of his impairments.[11]

The ALJ did not discuss Dr. Mattox's Physical Residual Functional Capacity Questionnaire in any detail, but she does appear to have considered it, because she referenced the questionnaire at least twice in the administrative opinion.[12] The ALJ afforded Dr. Mattox's opinion significant weight as the opinion of claimant's long-term treating physician. The ALJ also reasoned that Dr. Mattox's opinion was "supported by medical signs and laboratory findings and is consistent with the record as a whole."[13] The ALJ appears to have placed great weight on the fact that

> neither Dr. Mattox nor Dr. Moore ever opined that claimant was unable to work. In fact, based on the evidence, Dr. Mattox encouraged claimant to work. Dr. Mattox stated on numerous visits that claimant should try to find work that allowed him to sit down and did not require a lot of walking and standing . . . .[14]

---

[11] Tr. 346-50.

[12] *See* Tr. 16 (containing two references to Exhibit 9F, the Physical Residual Functional Capacity Questionnaire).

[13] Tr. 17.

[14] Tr. 16.

Dr. Mattox referred claimant to Dr. Moore in March of 2008.[15]   Claimant reported to Dr. Moore that he used a cane for ambulation.  His pain had ups and downs, but, in general, he could walk no more than a few blocks without being significantly limited by the pain.  Dr. Moore's impression was that claimant's pain was reasonably well controlled, but that he was unable to do any significant amount of ambulation.  Dr. Moore prescribed Fosamax, which he hoped would limit the progression of claimant's condition enough that he would not need a total hip replacement.  Dr. Moore recommended that claimant limit the amount of weight he put on the injured hip, and asked him to return in one year for a follow-up.[16] Claimant returned to Dr. Moore, as recommended, in March of 2009.  Claimant reported that his symptoms had not worsened, but he still experienced debilitating pain in his left hip at a level of 8 out of 10.  He also continued to use a cane for ambulation.  On examination, claimant exhibited significant limitations on flexion, extension, and range of motion in the left hip.  Pain was present mostly in the extremes of the range of motion.  X-rays did not show any significant changes from the year before.  Dr. Moore recommended that claimant undergo an MRI to determine the extent of any collapse in claimant's hip joint, and that, depending on the results of the MRI, claimant might want to consider a surgical procedure called core

---

[15] Tr. 159-60, 165.
[16] Tr. 159-60.

8

decompression.[17] Claimant ended up having the core depression in on May 19, 2009. He tolerated the procedure well and experienced no complications.  Dr. Moore advised claimant to limit himself to only toe-touch weight bearing on his left leg for six weeks.[18]  At a six-week follow-up visit on July 2, 2009, claimant reported to Dr. Moore that "he is really no better than he was prior to his surgery."[19]  Dr. Moore was "at something of a loss to explain [claimant's] continued pain."[20]  Although the decompression procedure has only about a 60% success rate, Dr. Moore had expected "at least some early improvement."[21]  During another follow-up visit on September 17, 2009, claimant reported that his symptoms were "actually somewhat better," and that he was able to walk without the use of a cane.[22]  Even so, claimant had begun to experience severe low back pain radiating into his leg, along with some numbness and tingling.  On examination, claimant demonstrated some pain on a straight leg raise, and some decreased sensation in his calf and foot.  Dr. Moore recommended he see another doctor for his spinal pain, but stated that he "would not recommend anything further to him at this point for the osteonecrosis in his left hip."[23]  The ALJ

---

[17] Tr. 181.

[18] Tr. 338-39.

[19] Tr. 329.

[20] *Id.* (alteration supplied).

[21] *Id.*

[22] Tr. 328.

[23] *Id.*

assigned significant weight to Dr. Moore's diagnosis because it was "consistent with other evidence in the record."[24]

Claimant does not raise any specific criticisms of the ALJ's treatment of Dr. Moore's records and opinions.  With regard to Dr. Mattox, however, claimant asserts that the ALJ improperly considered only selective portions of Dr. Mattox's Physical Residual Functional Capacity Questionnaire, and that if the questionnaire had been considered in its entirety, the limitations noted therein would have precluded even the sedentary work the ALJ found claimant to be capable of performing.[25]  Specifically, claimant points to Dr. Mattox's assessments that claimant would frequently experience pain or other symptoms that were sufficiently severe to interfere with attention and concentration, and that claimant would need to take unscheduled breaks one to two times during an eight-hour workday.[26]  The ALJ did not mention either of

---

[24] Tr. 17.

[25] The ALJ found the following residual functional capacity:

> a range of sedentary work as defined in 20 CFR 404.1567(a) with the following limitations: a sit/stand option; no foot control operations with the left leg; never climbing ramps, stairs, ladders, ropes or scaffolds; never kneeling, squatting, crouching or crawling; no more than occasional stooping; no work around unprotected heights; and work limited to simple, routine and repetitive tasks.

Tr. 15.

[26] Claimant makes other arguments that are either unsupported by the record or based on findings that would not be inconsistent with the ALJ's residual functional capacity assessment.  For example, Dr. Mattox's notations that claimant's impairments would last at least twelve months, and that claimant's limitations were reasonably consistent with the conditions with which he had been diagnosed, do nothing, on their own, to establish disability.  Claimant also points out that Dr. Mattox stated he could stand for only thirty minutes at a time and would need the option to shift positions

those opinions in her administrative decision, and the court concludes that either of

the limitations could be material to the outcome of the disability determination.

During the administrative hearing, the ALJ asked the vocational expert to assume an

individual of claimant's age, education, and work experience who, due to severe pain,

could not sustain persistence or pace sufficient to perform even simple, routine tasks

on a regular basis.  The vocational expert testified that such an individual could not

be competitively employed in any job.[27]  With regard to work breaks, the vocational

expert testified that unskilled employees typically are permitted one break in the

morning, one break in the afternoon, and thirty minutes to an hour for lunch, and that

if an employee had to exceed those limits on a regular basis, he would be unable to

---

at will, but the ALJ's residual functional capacity finding included a sit-stand option.  Tr. 15.
Claimant also stresses that Dr. Mattox "believed that Mr. Hart could only sit 6 hours, stand 30
minutes at a time, and stand and walk less than two hours," restrictions which "would preclude 8
hour sedentary work . . . ."  *Id.*  That is a mischaracterization of Dr. Mattox's report.  Dr. Mattox
indicated that claimant could sit for *at least six hours* during a workday, not *only* six hours.  It is
possible for an individual who can sit for a total of at least six hours, and stand/walk for a total of
less than two hours, to be capable of completing an eight-hour workday.  Claimant also points out
that the vocational expert testified that available jobs typically would allow a maximum of only two
absences each monthly.  Even so, there is no evidence that claimant would require more than two
monthly absences.  Dr. Mattox indicated that clamant likely would be absent from work only about
once a month.  Tr. 350.  Claimant's suggestion that he would miss more work because he has
unpredictable "good" and "bad" days is nothing more than speculation.  Finally, claimant asserts that
Dr. Mattox's opinion that claimant could stoop or crouch only 10% of the time during an eight-hour
workday "would greatly limit Mr. Hart from being able to perform sedentary work."  Doc. no. 8, at
10.  However, he provides no basis for that assertion, and the court knows of no reason why
sedentary work would necessitate stooping or crouching more than 10% of the time.  The vocational
expert testified that a complete inability to stoop would not have a significant effect on the ability
to do sedentary work.  Tr. 51-52.

   [27] Tr. 50.

work in any jobs existing in significant numbers in the national economy.[28]  The vocational expert also testified that, within the group of jobs available to someone with claimant's limitations, an employee would not be permitted to leave the workstation for ten to fifteen minutes at a time for the purpose of moving around to alleviate pain.[29]  Within certain jobs, including Order Clerk and Invoice Clerk, an employee might be permitted to take some unscheduled breaks, but would not be permitted to lie down during the day.[30]

Based on the vocational expert's testimony, either the limitation on claimant's ability to concentrate, or the need for him to take unscheduled breaks, could preclude him from performing gainful work activity.  But the ALJ did not discuss either of those limitations in the administrative opinion.  Specifically, she did not explain why she failed to include those limitations in her residual functional capacity finding despite affording great weight to Dr. Mattox's opinion.   In his brief, the Commissioner articulated the following reasons why the ALJ *might* have failed to include the limitations on claimant's ability to concentrate:

> While Dr. Mattox opined that Plaintiff's pain would interfere with his ability to concentrate, this statement is not supported by Dr. Mattox's treatment notes or other evidence in the record.  Dr. Mattox consistently reported that Plaintiff was limited to light duty work with no standing

---

[28] *Id.*

[29] Tr. 51.

[30] Tr. 53.

or walking and the ALJ found these limitations supported by the evidence and consistent [sic]. The ALJ properly did not include limitations that were not supported by the record. Further, the ALJ also found Plaintiff's subjective complaints of the severity and limiting nature of his pain not entirely credible. Dr. Mattox's opinion of the limiting effects of Plaintiff's pain appears to be based on Plaintiff's own subjective complaints. Because the ALJ found Plaintiff's subjective complaints not entirely credible, the ALJ properly did not credit this particular limitation in Dr. Mattox's opinion.[31]

With regard to the need for unscheduled breaks, the Commissioner states:

> Dr. Mattox indicated in his opinion that Plaintiff may "sometimes need to take unscheduled breaks" one or two times a day . . . . Dr. Mattox did not indicate the length of these breaks and the question itself suggests that Plaintiff will not need these breaks every day, but only "sometimes" . . . . Dr. Mattox's treatment notes do not reflect a need for such breaks. Dr. Mattox also answered "no" to the question of whether Plaintiff would need periods of walking around during an 8 hour day and yes to Plaintiff needing a job that permits shifting at will from sitting to standing . . . . Plaintiff's only support for the idea that he needs to lay down for 15 minutes every hour is his own statements . . . . Considering Dr. Mattox's opinion as a whole, along with Dr. Mattox's treatment notes and the other evidence in the record, the ALJ found that Plaintiff could perform sedentary work with a sit/stand option (along with some other postural limitations) and that those were the limitations supported by the evidence . . . . The ALJ did not find a need for many unscheduled breaks throughout the day supported by Dr. Mattox's treatment notes or the other medical evidence . . . . The ALJ thoroughly explained why [s]he was giving great weight to Dr. Mattox's opinion.[32]

These arguments amount to nothing more than speculation about why the ALJ *might* have disregarded those portions of Dr. Mattox's assessment addressing

---

[31] Doc. no. 7 (Commissioner's initial brief), at 8-9 n.2.

[32] Doc. no. 10 (Commissioner's supplemental brief), at 2-3 (footnote and record citations omitted, alteration supplied).

claimant's inability to concentrate and need for unscheduled breaks.  It would be improper for the court to engage in such speculation when there have not been clearly articulated findings on the subject by the ALJ.  Accordingly, remand is warranted for the ALJ to give further consideration to Dr. Mattox's Physical Residual Functional Capacity Questionnaire, reevaluate whether Dr. Mattox's assessments of claimant's inability to concentrate and need for unscheduled breaks should be included in her residual functional capacity finding, fully articulate any reasons for not including those assessments, and conduct any further proceedings the Commissioner deems appropriate.

Accordingly, the decision of the Commissioner is REVERSED, and this action is REMANDED to the Commissioner of the Social Security Administration for further proceedings consistent with this memorandum opinion and order.

The Clerk is directed to close this file.

DONE this 8th day of February, 2013.

United States District Judge